UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SNEHITA ASAI, et al.,

    Plaintiffs,

  v.

OBSTETRICS & GYNECOLOGY
ASSOCIATES, INC., et al.,

    Defendants.

Case No. 1:21-cv-111
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendants Obstetrics & Gynecology Associates, Inc., and Colleen Swayze's (together the "Obstetrics Defendants") Motion for Judgment on the Pleadings (Doc. 20), on Defendants Mercy Health Cincinnati LLC and Mercy Health Fairfield Hospital LLC (together the "Mercy Health Defendants") Motion for Judgment on the Pleadings (Doc. 21), and on Defendants AMSOL Physicians of Ohio P.C. and Fred Kahan (together the "AMSOL Defendants") Motion for Judgment on the Pleadings (Doc. 26). For the reasons set forth below, the Court **GRANTS** all three Motions (Docs. 20, 21, 26) and **DISMISSES** Plaintiffs Snehita Asai and Harshal Baride's Amended Complaint (Doc. 7) in its entirety **WITHOUT PREJUDICE** to re-filing in state court only.

## BACKGROUND

For purposes of the instant Motion, the Court accepts as true the factual allegations in the operative First Amended Complaint (Doc. 7). Thus, the Court

reports those allegations here, but with the disclaimer that these facts are not yet established, and may never be.

Plaintiff Snehita Asai became pregnant sometime in 2015 and had her baby on March 3, 2016. (*Id.* at #67–68). Asai received prenatal care at Mercy Fairfield Hospital and also gave birth there. The Plaintiffs, Asai and her husband Harshal Baride, allege that the treatment Asai received from the various Defendants caused her to develop compartment syndrome. (*Id.* at #68).

On March 3, 2017, the Plaintiffs sent all Defendants a letter required under Ohio law to extend the one-year statute of limitations for medical malpractice claims by 180 days. (*Id.*). Although several of the Defendants received the letter, the AMSOL Defendants, who had changed business addresses, did not. (*Id.* at #68–69). The Plaintiffs filed a complaint in state court on August 28, 2017, but then voluntarily dismissed that complaint without prejudice and later refiled on December 18, 2018. (*Id.* at #69). On June 26, 2019, the state trial court granted summary judgment to the AMSOL Defendants on statute of limitations grounds because they had not received the 180-day notice letter. (*Id.* at #70). The state court also denied the Plaintiffs' motion to set aside that judgment. On September 24, 2019, the state court granted a motion to exclude expert testimony from the Plaintiffs' proposed expert witness for failure to timely submit his expert report, which the Plaintiffs considered unnecessary under Ohio Civil Rule 10. (*Id.* at #70–71). The state court granted summary judgment to the remaining Defendants in the state court action on December 10, 2019. (*Id.* at #72). The Plaintiffs appealed to the appropriate Ohio

intermediate appellate court, and it affirmed the judgment of the trial court on September 8, 2020. (*Id.*). The Ohio Supreme Court declined to hear the Plaintiffs' case on December 29, 2020. (*Id.*).

The Plaintiffs filed their initial Complaint (Doc. 1) in this action on February 17, 2021. Originally, they asserted largely the same claims of negligence that they apparently pursued in state court, but they also appended a claim that Ohio Rev. Code § 2323.43, which provides for compensatory damages in medical malpractice cases, as well as Ohio Civil Rule 10, which requires a certificate of expert review in such cases, are unconstitutional. (*See id.* at #4–13). But in the operative First Amended Complaint, filed June 9, 2021, the Plaintiffs shift tacks, and instead assert only a claim for violation of their due process rights under the United States and Ohio constitutions. (Doc. 7, #73–74). More specifically, the Plaintiffs say they "were denied an opportunity to be heard despite their good faith attempt in complying with the procedural requirements including the timely 180-day letter by application of the statute of limitations." (*Id.* at #73). The Plaintiffs also say that their expert "was stricken even after presenting a timely certificate of merit," which violated their due process rights. (*Id.* at #74). Accordingly, the Plaintiffs request that the Court "[e]nter a judgment declaring that Plaintiffs were deprived of the right to due process guaranteed by the Fourteenth Amendment to the United States Constitution and … Section 16, Article I, of the Ohio Constitution." (*Id.*).

On July 6, 2021, the Obstetrics Defendants and the Mercy Health Defendants each filed a Motion for Judgment on the Pleadings. (Docs. 20, 21). The AMSOL

3

Defendants followed suit on December 13, 2021. (Doc. 26). All Defendants make essentially the same arguments: (1) that the Plaintiffs' Amended Complaint contains insufficient factual allegations to state a claim against them; (2) that the Amended Complaint fails to allege that they are state actors who could have violated the Plaintiffs' due process rights; and (3) that the Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine because the Plaintiffs are effectively seeking to appeal a state court proceeding in federal district court.

The Plaintiffs filed separate but apparently identical responses in opposition (Docs. 22, 23) to both the Obstetrics Defendants' and the Mercy Health Defendants' Motions on July 21, 2021. The Obstetrics Defendants and the Mercy Health Defendants timely replied in support (Docs. 24, 25) of their Motions. The Plaintiffs also responded in opposition (Doc. 27) to the AMSOL Defendants' Motion on December 27, 2021. The matter is now before this Court.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed in much the same manner as a motion to dismiss under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). This means the court construes the non-moving party's pleadings in the light most favorable to it, accepts as true the allegations contained therein, and draws all reasonable inferences in the non-moving party's favor. *See Bullington v. Bedford Cnty.*, 905 F.3d 467, 469 (6th Cir. 2018). The court should grant the motion only if, having done all this, the court nevertheless finds that there is no issue of material

4

fact and the moving party is entitled to judgment as a matter of law. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014). Accordingly, when the moving party is a defendant, a plaintiff need only provide the same "short and plain statement of the claim showing that the pleader is entitled to relief" that would suffice to survive a motion to dismiss under Rule 12(b)(6). *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

But that short and plain statement must offer more than mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This means a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). In sum, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.*

5

**LAW AND ANALYSIS**

Pursuant to federal statute and the related *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to review and set aside the decisions of state courts. *See* 28 U.S.C. § 1257 (authorizing only the Supreme Court to review "[f]inal judgments or decrees rendered by the highest court of a State"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (the *Rooker-Feldman* doctrine requires dismissal of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

That is exactly what the Plaintiffs are seeking here. More specifically, the only claims in the Amended Complaint concern alleged due process violations by the state courts when they rejected the Plaintiffs' arguments and granted judgment in favor of the Defendants, and the only relief requested is a declaration that the state court proceedings violated the Plaintiffs' due process rights. (*See* Doc. 7, #73–74). To have legal effect, such a declaration would presumably also entail setting aside the state court judgment. Thus, this Court could only afford relief in this case by effectively reversing a state court judgment, the very thing it lacks the authority to do. *See Hall v. Callahan*, 727 F.3d 450, 453–54 (6th Cir. 2013) (affirming dismissal of claims under *Rooker-Feldman* doctrine where plaintiffs sought "a declaration that their rights were violated [in the state court proceeding] and an injunction as to the enforcement of the [state court] judgment") (alterations omitted). Having failed to prevail on their constitutional arguments in the Ohio courts, whether because they failed to raise

6

those arguments, or because the Ohio courts rejected them, the Plaintiffs may not invoke the jurisdiction of this Court to disturb the disposition of their state case. *See, e.g., id.* at 453 ("The *Rooker-Feldman* doctrine prevents a federal court [other than the Supreme Court] from exercising jurisdiction over a claim alleging error in a state court decision.") (internal quotation marks omitted); *Evans v. Cordray*, 424 F. App'x 537, 538 (6th Cir. 2011) ("If the source of the plaintiff's injury is the state-court judgment itself, then the *Rooker-Feldman* doctrine bars the federal claim.").

The Plaintiffs argue otherwise, stating that they are not seeking review of the state court judgment, but instead are asking the Court to determine whether the state court violated their due process rights. (Opp'n to AMSOL Mot., Doc. 27, #283–84). To be sure, courts have found the *Rooker-Feldman* doctrine inapplicable in cases where the plaintiff asserted an "independent claim," even if the claim was closely related to matters previously litigated in state court. *See McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) (quoting *Exxon Mobil Corp.*, 544 U.S. at 293). For example, the Sixth Circuit determined in *McCormick* that the *Rooker-Feldman* doctrine did not bar a plaintiff's claims based on alleged fraud perpetrated by other parties during state court litigation. *Id.* The Sixth Circuit explained that a claim is not barred under the *Rooker-Feldman* doctrine if the "source of the injury" is something other than the state court decision. *Id.* at 393.

To explain the difference, the Sixth Circuit approvingly quoted the following Second Circuit hypothetical:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the

7

> father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do … [On the other hand], [s]uppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination.

*Id.* at 394 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87–88 (2d Cir. 2005)). Here, the claims in the Amended Complaint are like the father's, not the employee's. The Plaintiffs allege that the state court proceedings violated their due process rights, and they effectively seek reversal of the state court judgment on that basis. They do not reassert any of their original claims against the Defendants, nor do they make any other claims based on the Defendants' acts apart from the state court judgment. Notably, the original Complaint (Doc. 1) in this case might not have been subject to dismissal on *Rooker-Feldman* grounds, because instead of a due-process claim based on the state court judgment, it asserted the same negligence claims against the same Defendants that were apparently already litigated in state court. (Instead, that Complaint likely would have been subject to dismissal on claim preclusion grounds, and possibly also for lack of subject-matter jurisdiction based on the absence of either complete diversity or a bona fide federal question. (*See* Compl., Doc. 1, #2–3 (identifying Plaintiffs and Defendants as citizens of Ohio)).

Viewed another way, the fact that the relief the Plaintiffs are seeking is entirely retrospective also supports the conclusion that the *Rooker-Feldman* doctrine

8

bars their claims. *See VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) ("A court cannot determine the source of the injury without reference to the plaintiff's request for relief.") (cleaned up). That is so because when plaintiffs seek only retrospective relief in connection with a state court proceeding in which they were unsuccessful, it is more likely that the source of their injury is the state court judgment itself, rather than some ongoing or anticipated act by a third party. *See Berry v. Schmitt*, 688 F.3d 290, 300 (6th Cir. 2012) (noting "distinction between backward- and forward-looking claims" for *Rooker-Feldman* purposes).

For example, in *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006), an attorney challenged several Michigan Supreme Court Justices' refusals to recuse themselves in past cases while also seeking an injunction requiring that they recuse themselves going forward. On *Rooker-Feldman* grounds, the Sixth Circuit affirmed dismissal of the attorney's claims seeking a declaratory judgment that the past recusal decisions had been erroneous, but it reversed the dismissal of claims for prospective relief. *Id.* at 644–46; *see also Berry*, 688 F.3d at 302 (reversing dismissal of attorney's civil rights claim on *Rooker-Feldman* grounds where "the 'source of the injury' [was] the threat of future enforcement, and not the prior state court decision"); *Hood v. Keller*, 341 F.3d 593, 598 (6th Cir. 2003) (dismissal on *Rooker-Feldman* grounds inappropriate where plaintiff convicted of violating statute requiring permit to enter Ohio state house sought injunctive relief against future enforcement of statute). Here, the Plaintiffs are not seeking any prospective relief, for example injunctive relief against future enforcement of a judgment, but instead ask only that the Court declare a past

9

Ohio judicial proceeding to have violated their constitutional rights. That makes their claim like the attorney's request for a declaration that past recusal decisions were unlawful. *See Fieger*, 471 F.3d at 644.

Finally, unlike the original Complaint, which included a broad claim that an Ohio statute and Civil Rule are unconstitutional, (*see* Doc. 1, #13–14), the Amended Complaint does not ask this Court to declare any statute unconstitutional, but instead alleges only that the particular rulings of the state courts denied the Plaintiffs due process. (*See* Doc. 7, #73–74). This focus further confirms that the Plaintiffs are seeking review of a state court decision rather than some other form of relief. *Cf. Hood*, 341 F.3d at 597 ("The *Rooker-Feldman* doctrine, however, does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely a general challenge to the constitutionality of the state law applied in the state action, rather than a challenge to the law's application in a particular state case.") (internal quotation marks omitted); *Hall*, 727 F.3d at 456 (general challenge to constitutionality of state statute not barred under *Rooker-Feldman*).

But that does not mean that the Plaintiffs here would be in the clear if only the Amended Complaint still included the original Complaint's challenges to the constitutionality of the Ohio statute and Civil Rule. Rather, the Plaintiffs might well lack standing to pursue those claims, since nothing in either the Complaint or the Amended Complaint suggests that the Plaintiffs are likely to suffer harm from future enforcement of Ohio Rev. Code § 2323.43 or Civil Rule 10 (by contrast to the harm they have already suffered due to the past application of those rules in the state case

10

at issue here). *See Fieger*, 471 F.3d at 643–44 (considering standing sua sponte for attorney's claims for injunction ordering state court justices to recuse themselves).

Pursuant to Federal Rule of Civil Procedure 41(b), a dismissal for lack of jurisdiction is without prejudice as to the merits. On the other hand, such a dismissal also has preclusive effect concerning the precise jurisdictional question it addresses. *See N. Ga. Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429, 433 (11th Cir. 1993) (citing *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980)). Thus the Court's dismissal of the Amended Complaint pursuant to the *Rooker-Feldman* doctrine will have preclusive effect as to another federal court's determination of the *Rooker-Feldman* question itself. Accordingly, the Court's present dismissal of the claims in this case is without prejudice only as to re-filing in state, not federal, court. (Naturally, the original state court judgment would likely have preclusive effect as to claims and issues already litigated in state court. Thus, as a practical matter, the Plaintiffs may well be unable to pursue further litigation in any forum. Nevertheless, the Court wishes to make clear that their inability to pursue their claims in state court, if any, would result not from this Court's dismissal of the claims in this action, but instead from the preclusive effect of the previous state court judgment itself.)

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** all three Motions for Judgment on the Pleadings (Docs. 20, 21, 26) and **DISMISSES** the Amended Complaint (Doc. 7) in its entirety **WITHOUT PREJUDICE** to re-filing in state court only. The Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

**SO ORDERED.**

<u>July 29, 2022</u>
**DATE**

_____
**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**